# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# 1:17-cv-343-FDW

| | |
|---|---|
| DARRYL BOYD ADKINS, | ) |
| Plaintiff, | ) |
| vs. | ) **ORDER** |
| FNU MARTIN, et al., | ) |
| Defendants. | ) |

**THIS MATTER** is before the Court on initial review of Plaintiff's Complaint, (Doc. No. 1), as well as several pending Motions, (Doc. Nos. 5, 6, 7). Plaintiff is proceeding *in forma pauperis*. See (Doc. No. 12).

## I.  BACKGROUND

*Pro se* Plaintiff Darryl Body Adkins has filed a civil rights suit pursuant to 42 U.S.C. § 1983 with regards to an incident that allegedly occurred at the Marion Correctional Institution where he is still incarcerated. He names as Defendants Officer Martin in her individual capacity and Rehabilitative Diversion Unit (RDU) Director Julia Jenkins in her official capacity.

Construing the Complaint liberally and accepting the allegations as true, on October 6, 2017, Defendant Martin came to escort Plaintiff from the recreation cell back to his own cell. Plaintiff told Defendant Martin that he had been asking her for the television remote control ever since she put him in the recreation cell. She responded that she had been busy and forgot. Defendant Martin handcuffed Plaintiff's through the cell's trap door, removed him from the cell, and began escorting him while gripping his arm tightly. Plaintiff told Defendant Martin she was grabbing him too tightly and to loosen her grip. She did not say anything and gripped his arm

1

tighter. Plaintiff stopped walking, looked Defendant Martin in the eyes, and said she is grabbing him too hard and to loosen up. They started arguing. Plaintiff was about to continue walking when Defendant Martin shoved him by the arm and pushed him against the wall. Defendant Martin said "don't think 'cause she a old white lady cause she can still get in it and beat my ass [meaning she can fight]." (Doc. No. 1 at 5). Plaintiff, who was was still pinned to the wall, started laughing. Defendant Martin pulled him off the wall, walked him to his cell, and called on her walkie talkie for the control booth to open Plaintiff's cell door. Defendant Martin was still gripping Plaintiff's arm tightly and Plaintiff was still laughing at her.

When the cell door opened, Plaintiff "yanked" his arm from Defendant Martin's tight grasp. Defendant Martin let go of his arm and Plaintiff walked into his cell. When he was all the way into his cell towards the bed, still handcuffed, he turned around to see Defendant Martin standing outside the cell door fumbling with her pepper spray holster. She pointed the pepper spray can at Plaintiff so he turned his head and closed his eyes. He felt the chemicals hitting his hair, right jaw, and right ear. He did nothing aggressive towards Martin and felt his life was in danger from this excessive use of force that was unconstitutional and violated prison policy. No other officers was present at the time of Defendant Martin's use of force. (Doc. No. 1 at 7).

Plaintiff was partially blind and tried to remove the pepper spray from his face yet it spread to his eyes. Plaintiff rushed towards Martin outside the cell and punched her face. She tumbled backwards and fell, then Plaintiff jumped on top of her and punched her a few more times. A Code-4 was called on the intercom. Plaintiff got up off Defendant Martin and backed into his cell to await the first responder officers. Plaintiff told the officers that Defendant Martin pepper sprayed him for no reason and that he acted in self-defense to prevent further harm because he felt his life was in danger. Plaintiff felt officers piling on top of him to bring him down to the floor. They

2

cuffed and shackled him then roughly snatched him off the floor to escort him to lockup in E-unit for detox in the showers. Defendant Martin denied Plaintiff's version of events so he asked to look at the surveillance video footage.

Defendant Jenkins is the head program director for the RDU program and is responsible for every inmate participating in the RDU. She promises when each inmate arrives at the facility that they will be safe and protected. She is informed when any use of force happens. Defendant Jenkins has not shown any concern by doing an investigation and disciplining Martin for her unprofessional actions of pepper-spraying Plaintiff wrongfully. (Doc. No. 1 at 4). Defendant Jenkins failed to protect Plaintiff from violence. She knew Defendant Martin was in the wrong and that Plaintiff was in danger from staff. Defendant Jenkins has been fully aware of the incident because she saw video footage and placed him on lockup for 6 months. She is authorized to release him from the RDU program and transfer him to another prison to prevent retaliation from Defendant Martin and her many officer friends. Jenkins never punishes officers and always feels the inmate is in the wrong.

Plaintiff is in fear for his life from Defendant Martin and employees who have been harassing him because he defended himself against Defendant Martin. (Doc. No. 1 at 15). Defendant Martin knew Plaintiff has asthma and uses an inhaler for his breathing. He experienced a "slight asthma attack," shortness of breath, facial swelling, burning on his lower jawline and hair loss as a result of the incident. (Doc. No. 1 at 10-11).

Plaintiff seeks transfer away from Marion C.I., removal from RDU program, and discovery.

**II. STANDARD OF REVIEW**

Because Plaintiff is a prisoner proceeding *in forma pauperis*, the Court must review the

Complaint to determine whether it is subject to dismissal on the grounds that it is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). In its frivolity review, a court must determine whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). A complaint should not be dismissed for failure to state a claim "unless 'after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief.'" Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999)).

A *pro se* complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972); see also Smith v. Smith, 589 F.3d 736, 738 (4th Cir. 2009) ("Liberal construction of the pleadings is particularly appropriate where … there is a *pro se* complaint raising civil rights issues."). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990). A *pro se* complaint must still contain sufficient facts "to raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007); see Ashcroft v. Iqbal, 556 U.S. 662 (2009) (the Twombly plausibility standard applies to all federal civil complaints including those filed under § 1983). This "plausibility standard requires a plaintiff to demonstrate more than a sheer possibility that a defendant has acted unlawfully." Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (internal quotation marks omitted). He must

4

articulate facts that, when accepted as true, demonstrate he has stated a claim entitling him to relief. Id.

### III. DISCUSSION

**(1)** <u>**Individuals Not Named as Defendants**</u>

The Federal Rules of Civil Procedure provide that, "[i]n the complaint the title of the action shall include the names of all the parties." Fed. R. Civ. P. 10(a); see <u>Myles v. United States</u>, 416 F.3d 551 (7th Cir. 2005) ("to make someone a party the plaintiff must specify him in the caption and arrange for service of process."). Although *pro se* litigants are entitled to have their pleadings liberally construed, <u>Haines</u>, 404 U.S. at 520, "[d]istrict judges have no obligation to act as counsel or paralegal to *pro se* litigants," <u>Pliler v. Ford</u>, 542 U.S. 225 (2004).

The body of the Complaint contains allegations against individuals who are not named as defendants in the caption as required by Rule 10(a). This failure renders Plaintiff's allegations against them nullities. <u>See</u>, e.g., <u>Londeree v. Crutchfield Corp.</u>, 68 F.Supp.2d 718 (W.D. Va. Sept. 29, 1999) (granting motion to dismiss for individuals who were not named as defendants in the compliant but who were served).

Therefore, to the extent that Plaintiff intended to assert claims on individuals who are not named in the case caption as defendants, these claims cannot proceed.

**(2)** <u>**Defendant Jenkins**</u>

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of Another State, or by Citizens of any Foreign State." U.S. Const. Amend. 11. Thus, § 1983 suits against a state, its agencies, and its officials sued in their official capacities for damages are barred absent a waiver by the State or a valid congressional override.

Kentucky v. Graham, 473 U.S. 159, 169 (1985). "[A]n official capacity suit is, in all respects other than name, to be treated as a suit against the entity." Graham, 473 U.S. at 166. The entity's policy or custom must have been the "moving force" behind the violation of federal law. Polk County v. Dodson, 454 U.S. 312, 326 (1981); Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 694 (1978).

Plaintiff fails to allege the existence of a custom or policy that resulted in the alleged excessive use of force and thus has failed to state a claim against Defendant Jenkins in her official capacity. Therefore, the claims against Defendant Jenkins are dismissed.

**(3)** **Defendant Martin**

Assuming that Plaintiff has stated a plausible excessive force claim against Defendant Martin, the Complaint is nevertheless subject to dismissal because Plaintiff has failed to state a sufficient claim for relief. He seeks transfer away from Marion C.I. and removal from RDU program.[1]

Plaintiff does not have a federally protected liberty interest in any particular housing or classification unless it exceeds the scope of his original sentence and imposes an atypical and significant hardship in relation to the ordinary incidents of prison life. See Sandin v. Conner, 515 U.S. 472 (1995). Plaintiff makes no such showing. He simply alleges that he does not feel safe and has been harassed by Defendant Martin's officer friends since the incident occurred. See Moody v. Grove, 885 F.2d 865 (4th Cir. 1989) ("[v]erbal abuse alone does not violate a constitutional right.") (unpublished) (citing Collins v. Cundy, 603 F.2d 825, 827 (10th Cir. 1979)).

Plaintiff has made an insufficient claim for relief and for this reason the Complaint cannot

---

[1] Plaintiff's request for documentation with regards to the incident is in the nature of a request for discovery which is premature at this juncture because the Complaint is insufficient to proceed.

proceed at this time.

## IV. PENDING MOTIONS

**(1) <u>Trust Fund Receipt</u>**

Plaintiff's "Notice Motion to Clerk of Court Order Marion Corrections Inst. Trust Fund Accountant Officer Staff to Release Inmate Darryl B. Adkins Last 6 to 12 Months Trust Fund Receipt to this Clerk of Court," (Doc. No. 5), is moot. The institution has filed his prisoner trust account statement and he has been granted leave to proceed *in forma pauperis*.

**(2) *Pro Se* <u>Settlement Assistance Program</u>**

In his "Notice Motion for WDNC Pro Se Settlement Assistance Program," (Doc. No. 6), Plaintiff asks to participate in the Court's *pro se* settlement assistance program. This motion will be denied because the Court's program does not apply to prisoner civil rights cases.

**(3) <u>Summons</u>**

In Plaintiff's "Notice Motion for Defendants Summons," (Doc. No. 7), Plaintiff attempts to summon Defendants and require them to serve an answer. This motion is denied as premature because, when he filed it, the Complaint had not yet been initially reviewed.

## V. CONCLUSION

For the reasons stated herein, the Complaint is deficient and subject to dismissal. Plaintiff shall have **fourteen (14) days** in which to file an Amended Complaint in which he may attempt to cure these deficiencies and state a facially sufficient claim for relief. Although Petitioner is appearing *pro se*, he is required to comply with all applicable timeliness and procedural requirements, including the Local Rules of the United States District Court for the Western District of North Carolina and the Federal Rules of Civil Procedure. The Amended Complaint must be on a § 1983 form, which the Court will provide, and it must refer to the instant case number so that it

7

is docketed in the correct case. It must contain a "short and plain statement of the claim" showing that Plaintiff is entitled to relief against each of the defendants. Fed. R. Civ. P. 8(a)(2). The Amended Complaint must contain all claims Plaintiff intends to bring in this action, identify all defendants he intends to sue, and clearly set forth the factual allegations against each of them. Plaintiff may not amend his Complaint by merely adding defendants and claims in a piecemeal fashion. The Amended Complaint will supersede the original Complaint so that any claims or parties omitted from the Amended Complaint will be waived. See Young v. City of Mt. Ranier, 238 F.3d 567 (4th Cir. 2001).

**IT IS, THEREFORE, ORDERED** that:

1. The Complaint, (Doc. No. 1), is **DISMISSED** as facially insufficient pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

2. Plaintiff shall have **fourteen (14) days** in which to file an Amended Complaint in accordance with this order and all applicable rules and procedures. If Plaintiff fails to file an Amend Complaint in accordance with this Order, this action will be dismissed and closed without prejudice and without further notice to Plaintiff.

3. The Clerk is directed to mail a copy of a new Section 1983 complaint form to Plaintiff.

4. Plaintiff's "Notice Motion to Clerk of Court Order Marion Corrections Inst. Trust Fund Accountant Officer Staff to Release Inmate Darryl B. Adkins Last 6 to 12 Months Trust Fund Receipt to this Clerk of Court," (Doc. No. 5), is **DENIED** as moot.

5. Plaintiff's "Notice Motion for WDNC Pro Se Settlement Assistance Program," (Doc. No. 6), is **DENIED.**

6. Plaintiff's "Notice Motion for Defendants Summons," (Doc. No. 7), is **DENIED.**

Signed: April 12, 2018

Frank D. Whitney
Chief United States District Judge