UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:17-cv-343-FDW

| DARRYL BOYD ADKINS, | ) |
| --- | --- |
| Plaintiff, | ) |
| vs. | ) ORDER |
| FNU MARTIN, et al., | ) |
| Defendants. | ) |

**THIS MATTER** is before the Court on initial review of Plaintiff's Amended Complaint, (Doc. No. 17). Plaintiff is proceeding *in forma pauperis*. See (Doc. No. 12).

**I.  BACKGROUND**

*Pro se* Plaintiff Darryl Body Adkins has filed a civil rights suit pursuant to 42 U.S.C. § 1983 with regards to an incident that allegedly occurred at the Marion Correctional Institution where he is still incarcerated. The Complaint was dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and he was given the opportunity to file an Amended Complaint, which is presently before the Court on initial review. See (Doc. No. 16).

Plaintiff names as the sole Defendant Officer Martin in her individual capacity.[1] Construing the Amended Complaint liberally and accepting the allegations as true, Defendant Martin came to escort Plaintiff from the recreation cell back to his own cell on October 6, 2017. Plaintiff told Defendant Martin that he had been asking her for the television remote control ever since she put

---

[1] Plaintiff refers to other individuals in the body of the Amended Complaint, but clearly identifies Martin as the sole Defendant against whom he is proceeding. See also Fed. R. Civ. P. 10 ("In the complaint the title of the action shall include the names of all of the parties); Myles v. United States, 416 F.3d 551 (7th Cir. 2005) ("to make someone a party the plaintiff must specify him in the caption and arrange for service of process").

1

him in the recreation cell. She responded that she had been busy and forgot. Defendant Martin cuffed Plaintiff's hands in front of his body, removed him from the cell, and began escorting him while gripping his arm tightly. Plaintiff told Defendant Martin she was grabbing him too tightly and to loosen her grip. She did not say anything and gripped his arm tighter. Plaintiff stopped walking, looked Defendant Martin in the eyes, and said she is grabbing him too hard and to loosen up. They started arguing. Plaintiff was about to continue walking when Defendant Martin shoved him by the arm and pushed him against the wall. Defendant Martin said "don't think 'cause she a old white lady cause she can still get in it and beat my ass [meaning she can fight]." (Doc. No. 17 at 5). Plaintiff, who was was still pinned to the wall, started laughing. Defendant Martin pulled him off the wall, walked him to his cell, and called on her walkie talkie for the control booth to open Plaintiff's cell door. Defendant Martin was still gripping Plaintiff's arm tightly and Plaintiff was still laughing at her.

When the cell door opened, Plaintiff "yanked" his arm from Defendant Martin's tight grasp. (Doc. No. 17 at 6). Defendant Martin let go of his arm and Plaintiff walked into his cell. When he was all the way into his cell towards the bed, still handcuffed, he turned around to see Defendant Martin standing outside the cell door fumbling with her pepper spray holster. She pointed the pepper spray can at Plaintiff so he turned his head and closed his eyes. He felt the chemicals hitting his hair, right jaw, and right ear. He did nothing aggressive towards Martin and felt his life was in danger from this excessive use of force that was unconstitutional and violated prison policy. No other officers was present at the time of Defendant Martin's use of force. (Doc. No. 17 at 6).

Plaintiff was partially blind and tried to remove the pepper spray from his face yet it spread to his eyes. Plaintiff rushed towards Martin outside the cell and punched her face. She tumbled

2

backwards and fell, then Plaintiff jumped on top of her and punched her a few more times. A Code-4 was called on the intercom. Plaintiff got up off Defendant Martin and backed into his cell to await the first responder officers. Plaintiff told the officers that Defendant Martin pepper sprayed him for no reason and that he acted in self-defense to prevent further harm because he felt his life was in danger. Plaintiff felt officers piling on top of him to bring him down to the floor. They cuffed and shackled him then roughly snatched him off the floor to escort him to lockup in E-unit for detox in the showers. Defendant Martin denied Plaintiff's version of events so he asked to look at the surveillance video footage. Defendant has denied Plaintiff's version of events so he has asked for an investigation and review of the video footage.

Petitioner was having a hard time breathing because of asthma and had a "slight" reaction due to the pepper spray which "almost" caused an asthma attack. (Doc. No. 17 at 8). The spray caused facial swelling and a nurse checkup that came back with no positive vital or blood pressure signs.

Plaintiff seeks Defendant Martin's permanent reassignment to another prison, damages, costs and fees, and discovery including video camera surveillance footage of the incident.

**II. STANDARD OF REVIEW**

Because Plaintiff is a prisoner proceeding *in forma pauperis*, the Court must review the Complaint to determine whether it is subject to dismissal on the grounds that it is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). In its frivolity review, a court must determine whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). A complaint should not be dismissed for failure

3

to state a claim "unless 'after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief.'" Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999)).

A *pro se* complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972); see also Smith v. Smith, 589 F.3d 736, 738 (4th Cir. 2009) ("Liberal construction of the pleadings is particularly appropriate where … there is a *pro se* complaint raising civil rights issues."). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990). A *pro se* complaint must still contain sufficient facts "to raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007); see Ashcroft v. Iqbal, 556 U.S. 662 (2009) (the Twombly plausibility standard applies to all federal civil complaints including those filed under § 1983). This "plausibility standard requires a plaintiff to demonstrate more than a sheer possibility that a defendant has acted unlawfully." Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (internal quotation marks omitted). He must articulate facts that, when accepted as true, demonstrate he has stated a claim entitling him to relief. Id.

**III.    DISCUSSION**

"[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment," Helling v. McKinney, 509 U.S. 25, 31 (1993). In its prohibition of "cruel and unusual punishments," the Eighth Amendment places

4

restraints on prison officials, who may not, for example, use excessive physical force against prisoners. Hudson v. McMillian, 503 U.S. 1, 1 (1992).

A prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be, objectively, "sufficiently serious," Wilson v. Seiter, 501 U.S. 294, 298 (1991); see also Hudson, 503 U.S. at 5, and must result in the denial of "the minimal civilized measure of life's necessities," Rhodes v. Chapman, 452 U.S. 337, 347 (1981). The second requirement is that a prison official must have a "sufficiently culpable state of mind." Wilson, 501 U.S. at 297, 302-03; Hudson, 503 U.S. at 5, 8. "[T]he use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury." Hudson, 503 U.S. 1, 4 (1992); see Wilkins v. Gaddy, 559 U.S. 34, 34 (2010). The "core judicial inquiry," is not whether a certain quantum of injury was sustained, but rather "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson, 503 U.S. at 7. "When prison officials maliciously and sadistically use force to cause harm," the Court recognized, "contemporary standards of decency always are violated ... whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." Hudson, 503 U.S. at 9, 13–14.

Plaintiff alleges that Defendant Martin pepper sprayed his face while he was handcuffed, not resisting, and posed no threat to her. These allegations state a facially sufficient claim for the use of excessive force.

Therefore, the Eighth Amendment excessive force claim will be permitted to proceed against Defendant Martin.

5

## IV. CONCLUSION

For the reasons stated herein, the Amended Complaint is sufficient to proceed against Defendant Martin.

**IT IS THEREFORE ORDERED** that:

1. The Amended Complaint, (Doc. No. 17), survives initial review pursuant to 28 U.S.C. § 1915.

2. **IT IS FURTHER ORDERED THAT** the Clerk is directed to commence the procedure for waiver of service as set forth in Local Rule 4.3 for **Defendant Martin** who is a current or former employee of NC DPS.

Signed: May 28, 2018

Frank D. Whitney
Chief United States District Judge